UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
(SOUTHERN DIVISION)

RM AUCTIONS, INC. and RM CLASSIC CARS, INC.,

      Plaintiffs,

v.                                      NO.: _____

KENNETH AHN and BROAD ARROW PRIVATE SALES, LLC d/b/a COLLECTORS GARAGE

      Defendants.
_____/

## COMPLAINT

Plaintiffs, RM Auctions, Inc. and RM Classic Cars, Inc. (together, "RM" or "RM Sotheby's") by and through their attorneys, and as their Complaint against Defendants Kenneth Ahn ("Ahn") and Broad Arrow Private Sales, LLC d/b/a Collectors Garage ("Broad Arrow" or "Collectors Garage") state as follows:

## THE PARTIES

1. RM Auctions, Inc. is a Delaware corporation having its principal place of business at 5536 County Road 11A, Auburn, IN, 46706.

2. RM Classic Cars, Inc. is an Ontario corporation having its principal place of business in Blenheim, ON.

3. Ahn is an individual residing in Michigan and/or Washington state.

4. Broad Arrow is a Michigan limited liability company recently formed by Ahn and which unlawfully competes with RM and which Ahn started by unlawfully luring RM employees and customers. On information and belief, none of Broad Arrow's members are Indiana citizens.

Broad Arrow partner Andrew Ruprecht is a citizen of New York. Broad Arrow Partner Alexander Weaver is a citizen of California. Broad Arrow partner Donnie Gould is a citizen of Florida.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper because Defendant Broad Arrow / Collectors Garage is located at 377 Fisher Road, Suite H, Grosse Pointe, MI 48230, which is located in Wayne County, Michigan in the Eastern District of Michigan, and the Eastern District of Michigan is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred. *See* 28 U.S.C. § 1391(b)(1) & (2); 28 U.S.C. § 102(a)(1).

## GENERAL ALLEGATIONS

7. RM hired Ahn in 2016 as President of RM Auctions, Inc. and RM Classic Cars, Inc. RM and Ahn signed an Employment Agreement effective November 1, 2016. (Employment Agreement, **Exhibit 1**.) He also entered a Stock Option Agreement and Shareholders Agreement on November 29, 2018 and December 21, 2018, respectively.

### Ahn's Resignation from RM

8. In April 2021, Ahn notified RM of his decision to resign. RM and Ahn executed an Amendment Agreement as of May 7, 2021, which was limited in scope to superseding certain provisions of Ahn's Shareholder Agreement and making "certain other agreements" amending specific terms of the Employment Agreement.

9. Effective August 9, 2021, RM and Ahn entered into a Second Amendment Agreement. The purpose of this agreement was to amend certain provisions of the Amendment Agreement and again make "certain other agreements."

10. None of the agreements fully superseded or replaced any other agreement. Rather, each amendment addressed only specific terms.

11. Per the Second Amendment Agreement, the termination of Ahn's employment was effective August 31, 2021.

12. Ahn's Employment Agreement, at sections 4, 5, 6, and 7, contain provisions regarding RM's "Confidential Information," including but not limited to trade secrets (section 4), intellectual and other property belonging to RM, called "Works" (section 5), a non-compete (section 6), and non-solicitation (section 7). (Ex. 1.)

13. Both the Amendment Agreement and the Second Amendment Agreement confirm that the Confidential Information and Works provisions of the Employment Agreement (sections 4 and 5, respectively) "**shall continue in effect following the termination of employment in accordance with their terms**."

14. Both the Amendment Agreement and the Second Amendment Agreement provide that the non-compete and non-solicitation provisions of the Employment Agreement (sections 6 and 7, respectively) "**cease to be of any force or effect**" upon Ahn's resignation, i.e., August 31, 2021.

   a. Ahn's pre-resignation competition and solicitation are not covered by these provisions by their terms even if the provisions were enforceable.

   b. Ahn's post-resignation competition and solicitation are not covered by these provisions because the provisions are voidable due to Ahn's fraudulent inducement and/or breach of his fiduciary duty of full disclosure when negotiating and entering the Amendment Agreement and Second Amendment Agreement, including but not limited to the integration clauses contained therein.

15. The Amendment Agreement and Second Amendment Agreement provided Releases.

a. The Releases, even if otherwise applicable and/or enforceable, do not cover unaccrued claims for post-release, post-resignation conduct by Ahn.

b. The Releases, even if otherwise applicable, are voidable due to Ahn's fraudulent inducement and/or breach of his fiduciary duty of full disclosure when negotiating and entering the Amendment Agreement and Second Amendment Agreement, including the Releases and integration clauses contained therein.

### Ahn's New Company

16. On October 15, 2021, Ahn organized Broad Arrow. Broad Arrow assumed the trade name Collectors Garage on December 10, 2021. Broad Arrow's website is at https://broadarrowgroup.com/. It lists as its "Team" and "founding members" Ahn and several individuals who were employed by RM until Ahn unlawfully solicited them, some employed by RM as recently as the fall of 2021:

- Among others, the "Senior Car Specialists" Broad Arrow boasts on its website include Andrew ("Barney") Ruprecht, who resigned from RM in August 2021; Alexander Weaver, who resigned from RM in October 2021 and Donnie Gould, who was employed at RM and resigned in November 2021.

- Broad Arrow's Chief Operating Officer, Alain Squindo, resigned from RM in July 2021.

- Broad Arrow's Chief Marketing Officer, Ian Kelleher, resigned from RM in July 2021.

- Mike Mortorano, Broad Arrow's Chief Administrative Officer and General Counsel, proposed his employment separation from RM in September 2021.

17. Again, Ahn's termination from RM was not effective until August 31, 2021, and he owed fiduciary duties of loyalty and had contractual obligations not to solicit or compete at least through that period, and beyond.

18. Broad Arrow's website includes links to its December 6 and December 13, 2021 press releases, attached as **Exhibits 2 and 3**, respectively. The December 6 release includes bios of Broad Arrow's key personnel, including repeatedly describing their most recent past experience at RM Sotheby's. (Ex. 2.)

19. On December 13, 2021, Yahoo News picked up Broad Arrow's press release, and reported that "*former RM Sotheby's forms* Broad Arrow Group and Collectors Garage." https://news.yahoo.com/broad-arrow-group-launches-collectors-211842282.html (attached as **Exhibit 4**.) Of course, RM Sotheby's did no such thing. Ahn, not RM, formed Broad Arrow d/b/a Collectors Garage by unlawfully misappropriating RM's confidential information and trade secrets, soliciting RM's customers and employees, and competing with RM in breach of both his Employment Agreement and fiduciary duties.

20. The Yahoo article references Broad Arrow's employees as being "[v]eterans from some of the most prestigious part of the collector car industry," which is a reference to RM, and notes that they have "joined forces to form a new platform" in competition with RM. (Ex. 4.)

21. Ahn is quoted in the Yahoo article discussing the "estimated $25 billion collector car market" in which he is now unlawfully competing with RM in breach of his Employment Agreement and fiduciary duties.

### COUNT I – BREACH OF EMPLOYMENT AGREEMENT

22. Plaintiffs reallege and fully incorporate all preceding paragraphs.

23. When Ahn resigned, he had a secret motive to compete with RM that he did not disclose to RM and, in fact, made intentionally deceptive and false remarks to RM management indicating that he did not plan to compete but would be pursuing entirely different endeavors.

24. In breach of his Employment Agreement, Ahn:

5

      a.   used trade secrets, other confidential information and Works of RM prior to his August 31, 2021 resignation in preparing to compete with RM; and

      b.   solicited RM customers and employees in preparing to compete with RM.

25.     In breach of his Employment Agreement, Ahn:

      a.   used trade secrets, other confidential information, and Works of RM after his August 31, 2021 resignation to compete with RM; and

      b.   solicited RM customers and employees away from RM while competing with RM.

26.     Neither the Amendment Agreement, the Second Amendment Agreement, or any Release contained therein absolves Ahn of his breaches due to his fraudulent inducement and breach of fiduciary duty of full disclosure when making those agreements and concealing the breaches he already committed and intended to further commit.

27.     RM suffered damages as a result of Ahn's breaches of his Employment Agreement.

WHEREFORE, RM respectfully requests recovery against Ahn for RM's actual losses, including the losses from the natural, foreseeable and proximate consequences of Ahn's breaches, including, but not limited to, any and all compensation and payments made during the breaches, lost profits, including the profits of Defendant Broad Arrow d/b/a Collectors Garage.

**COUNT II – MISAPPROPRIATION OF TRADE SECRETS UNDER THE INDIANA UNIFORM TRADE SECRETS ACT (IUTSA), IND. CODE § 24-2-3-2, ET. SEQ.**

28.     Plaintiffs reallege and fully incorporate all preceding paragraphs.

29.     Defendants acquired RM's trade secrets while knowing that they acquired the trade secretes by improper means.

30.     Defendants disclosed and used RM's trade secrets without express or implied consent by RM.

31.     The subject trade secrets include RM's customers, pricing, terms, business model, including, but not limited to an online market place and other related confidential information that

was discussed with Ahn during his tenure as President of RM, and employees and compensation to compete with RM and solicit RM's customers and employees, both pre- and post- Ahn's termination.

32. Defendants used improper means to acquire knowledge of the trade secret and, at the time of disclosure or use, knew or had reason to know that their knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it; acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; and derived from or through a person who owed a duty to RM to maintain its secrecy or limit its use.

33. Defendants' misappropriation of trade secrets by improper means was willful in all respects.

WHEREFORE, RM is entitled to actual losses, natural, foreseeable and proximate consequences of Defendants' misappropriations, including any and all compensation and payments made during the breaches, lost profits, unjust enrichment caused by misappropriation that is not already taken into account in computing damages for actual loss, payment of a reasonable royalty through at least August 31, 2022, and exemplary damages in the amount of twice any award because the trade secret misappropriation was malicious and willful.

## COUNT III – BREACH OF FIDUCIARY DUTY OF LOYALTY

34. Plaintiffs reallege and fully incorporate all preceding paragraphs.

35. An employee owes his employer a fiduciary duty of loyalty.

36. To that end, an employee who plans to leave his current job and go into competition with his current employer must walk a fine line. Prior to his termination, an employee must refrain from actively and directly competing with his employer for customers and employees and must continue to exert his best efforts on behalf of his employer.

37. An employee may make arrangements to compete with his employer, such as investments or the purchase of a rival corporation or equipment (to the extent not otherwise contractually prohibited). However, the employee cannot properly use confidential information specific to his employer's business **before the employee leaves his employ**.

38. The remedy for the breach of a fiduciary duty is requiring the agent to **disgorge** all compensation received during the period of employment in which the agent was also breaching his fiduciary duty.

39. Defendant breached his fiduciary duties of loyalty to RM by:

    a. using trade secrets, other confidential information and Works of RM prior to his resignation in preparing to compete with RM;

    b. soliciting RM customers and employees in preparing to compete with RM;

    c. using trade secrets, other confidential information, and Works of RM after his resignation to compete with RM notwithstanding the provisions of his Employment Agreement prohibiting it; and

    d. soliciting RM customers and employees away from RM while competing with RM.

WHEREFORE, RM respectfully requests recovery against Defendants for actual losses, disgorgement of all Ahn's compensation during the period of fiduciary breaches, including, but not limited to, compensation and amounts paid under Ahn's Shareholders Agreement and/or Stock Option Agreement, attorneys fees, and punitive damages.

### COUNT IV – BREACH OF FIDUCIARY DUTY OF FULL DISCLOSURE IN ENTERING AMENDMENT AGREEMENTS, RELEASES, AND INTEGRATION CLAUSES

40. Plaintiffs reallege and fully incorporate all preceding paragraphs.

41. When Ahn entered the Amendment Agreement, Second Amendment Agreement, and Releases and integration clauses contained therein, he was under a fiduciary duty to fully disclose to RM facts material to those agreements.

42. When Ahn entered those agreements, he had a secret motive which he did not disclose to compete with RM. In fact, Ahn made intentionally deceptive remarks to RM management indicating that he did not plan to complete but would be pursuing entirely different endeavors. As it turns out, Ahn was already starting to or already planning to cherry pick RM's top employees to form a competing company.

43. When Ahn entered those agreements, he did not disclose to RM that he had already been planning to compete with RM, and that he already used confidential information, trade secrets and Works of RM in preparing to compete with RM in breach of his Employment Agreement and fiduciary duty of loyalty.

44. When Ahn entered those agreements, he did not disclose to RM that he had already solicited customers and employees of RM in preparing to compete with RM in breach of his Employment Agreement and fiduciary duty of loyalty.

45. RM would not have entered the Amendment Agreement, Second Amendment Agreement, or Releases or integration clauses contained therein if Ahn had disclosed these material facts to RM.

46. RM would not have modified the non-compete or non-solicitation provisions of Ahn's Employment Agreement, agreed to make payments to Ahn under the Shareholders Agreement or Stock Option Agreement, or agreed to any integration clause had it known of Ahn's already completed breaches of his Employment Agreement and fiduciary duty or loyalty and/or his plans of further competition and solicitation and use of RM's confidential information, trade secrets, and Works.

9

47. Ahn's breach of his fiduciary duty of full disclosure of facts material to the agreements renders the Amendment Agreement, Second Amendment Agreement, and Releases and integration clauses contained therein voidable at RM's election.

WHEREFORE, RM respectfully requests a declaration that the Amendment Agreement and the Second Amendment Agreement, including the Releases and integration clauses contained therein, are void, and disgorgement of all compensation during the period of fiduciary breaches of the duty of full disclosure, including, but not limited to, compensation and amounts paid under Ahn's Shareholders Agreement and/or Stock Option Agreement, attorneys fees, and punitive damages.

### COUNT V – FRAUDULENT INDUCEMENT

48. Plaintiffs reallege and fully incorporate all preceding paragraphs.

49. When Ahn entered the Amendment Agreement, Second Amendment Agreement, and Releases and integration clauses contained therein, he made material false statements and omitted material information that induced the agreements, with the intention that RM would rely on his misrepresentations, omissions, and concealments.

50. When Ahn entered those agreements, he had a secret motive which he did not disclose to compete with RM. In fact, Ahn made false statements to RM management indicating that he did not plan to compete but would be pursuing entirely different endeavors. Ahn intended for RM to rely on these misrepresentations, and RM did rely on these misrepresentations.

51. When Ahn entered those agreements, he concealed from RM that he had already been planning to compete with RM, and that he already used confidential information, trade secrets and Works of RM in preparing to compete with RM in breach of his Employment Agreement and fiduciary duty of loyalty.

52. When Ahn entered those agreements, he concealed from RM that he had already solicited customers and employees of RM in preparing to compete with RM in breach of his Employment Agreement and fiduciary duty of loyalty.

53. RM would not have entered the Amendment Agreement, Second Amendment Agreement, or Releases or integration clauses contained therein if Ahn had disclosed these material facts to RM.

54. RM would not have modified the non-compete or non-solicitation provisions of Ahn's Employment Agreement, agreed to make payments to Ahn under the Shareholders Agreement or Stock Option Agreement, or agreed to any integration clause had it known of Ahn's completed breaches of his Employment Agreement and fiduciary duty or loyalty and/or his plans further competition and solicitation and use of RM's confidential information, trade secrets, and Works.

55. Ahn's fraudulent inducement of the Amendment Agreement, Second Amendment Agreement, and Releases and integration clauses contained therein renders these agreements voidable at RM's election.

WHEREFORE, RM respectfully requests a declaration that the Amendment Agreement and the Second Amendment Agreement, including the Releases and integration clauses contained therein, are void, as well as any recoverable attorneys fees, exemplary and punitive damages as a result of his intentional conduct in fraudulently inducing these agreements and provisions.

## COUNT VI – CIVIL CONSPIRACY

56. Plaintiffs reallege and fully incorporate all preceding paragraphs.

57. Civil conspiracy is defined as a "combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means."

58. Each participant in the conspiracy may be held responsible as a joint tortfeasor for damages caused by the wrongful or contemptuous acts regardless of the degree of active participation.

59. As fully set forth above, Ahn conspired with multiple former employees of RM who are now employed by Broad Arrow, attempted to conspire with other employees of RM, who still remain as employees of RM, but whom were approached by Ahn and/or others in the conspiracy and possibly others, to unlawfully misappropriate and use RM's confidential information, trade secrets, and Works and unlawfully solicit RM's customers and employees to unlawfully compete with RM.

WHEREFORE, RM respectfully requests recovery for RM's actual losses, including the losses from the natural, foreseeable and proximate consequences of these breaches, including, but not limited to, lost profits, including the profits of Broad Arrow.

## COUNT VII - TORTIOUS INTERFERENCE WITH CONTRACTS

60. Plaintiffs reallege and fully incorporate all preceding paragraphs.

61. Defendants had actual knowledge of RM's contracts, including employment agreements, with RM's employees.

62. Defendants intentionally interfered with RM's contracts with its employees in soliciting the employees away from RM to compete with RM.

WHEREFORE, RM respectfully requests recovery against Defendants for actual losses, and any available attorneys fees, exemplary damages and/or punitive damages for their intentional misconduct.

## COUNT VIII - TORTIOUS INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONSHIPS AS TO CUSTOMERS

63. Plaintiffs reallege and fully incorporate all preceding paragraphs.

64. Defendants had actual knowledge of RM's contracts and relationships with RM's customers.

65. Defendants intentionally interfered with RM's contracts and relationship with its customers in soliciting the customers and/or all or portions of their business away from RM to compete with RM.

WHEREFORE, RM respectfully requests recovery against Defendants for actual losses, and any available attorneys fees, exemplary damages and/or punitive damages for their intentional misconduct.

### COUNT IX – CONVERSION UNDER IND. CODE § 34-4-30-1 AND IND. CODE § 35-43-4-3

66. Plaintiffs reallege and fully incorporate all preceding paragraphs.

67. Defendants knowingly or intentionally exerted unauthorized control over the property of Plaintiffs, which caused Plaintiffs to suffer a pecuniary loss as a result.

68. Where trade secrets are misappropriated, recovery for conversion is available.

WHEREFORE, in addition to the damages suffered by RM for the misappropriation and conversion of its confidential information, trade secrets, and Works set forth above, RM is entitled to an award of treble actual damages, the costs of the action, and reasonable attorney's fees.

Dated this 22nd day of December 2021

Respectfully submitted,

*Mark J. Magyar*
Mark J. Magyar (P75090)
DYKEMA GOSSETT PLLC
Attorneys for Plaintiffs
Capitol View, 201 Townsend Street, Suite 900
Lansing, Michigan 48933
(517) 374-9100
(616) 776-7523 (direct)
mmagyar@dykema.com

Ashley R. Fickel (pending admission pro hac vice)
DYKEMA GOSSETT PLLC
333 South Grand Avenue, Suite 2100
Los Angeles, California 90071
213-457-1758 Direct
213-457-1800 Main
855-223-2781 Fax
AFickel@dykema.com

14